This is a case of race and age discrimination by a black Haitian-born attorney. against his employer, the City of New York, and supervisory officers. The District Court here granted summary judgment in the case against Mr. Pierre, both in regards to the federal claims as well as New York City human rights claims. And in so doing, it is our submission that the court misapplied the standard for summary judgment in reviewing appellant's claims made pursuant to New York City human rights law. In fact, a portion of the opinion makes it clear that it was applying the same standard. The Special Appendix, pages 32-33, where the court said that the city is also... Mr. Koli, what is the evidence that race or age was a motivating factor? First of all, in terms of race, long before all this happened, after Mr. Gonzalez was made the division chief, Kim, who was their overall head, told Mr. Kim to get rid of the black guy who was making too much money in his department. That black guy being LePierre. Additionally, Mr. Kim and Mr. Cox, by Mr. Cox, is some supervisor between Mr. Pierre and Kim, had discussed with Mr. Kim the fact that Mr. Pierre was making too much money, and Cox had indicated that he wanted Pierre fired, according to what he said. Was your client making more money than other people who were doing the same work? Because he had gotten the job as a political influence? Was he in fact? Look, what I'm trying to figure out is, was one of the reasons that people didn't really want to do much for your client was the fact that he was making more than others who were doing the same work. And we may think that's proper or improper or whatever, but that doesn't give rise to a federal case. No, no, there is nothing in the record to ever show that he was making more money than say, for instance, Susie Thomas, who had been there longer than everybody else. There's nothing in the record to show that it's just an allegation. Not even Mr. Gonzalez. But the point is, the point is, even if it's true that they wanted to get rid of him because he was making too much money, that is not race-based. Or age-based. Or age-based, really, yeah. If he was making too much money because he was a senior person who had been there longer, that might be an age-based argument. But that's not an argument that I see anybody making in this case. Any link between the added salary and age. No, it's the fact, I'll come to the age thing, because I mean, we can draw the inference based on the ages of the people being considered against him. The people that they hired both had much, much more experience with torts. And that's what this job was about. And you know, it may be because I've taught torts for 60 years, but I tend to think that experience in torts may be useful in dealing with torts cases. But that's not, that's really not their argument. Even though torts was the published requirement, they focus on personal injury, which is only a subset of torts. And in regard to torts, Mr. Pierre had handled tort matters since 2013 when he came there, without any problem. But more than anything else, let me quickly, I'll come back to the question, but let me quickly touch on the issue of race, and then go on to the issue of how they were treated differently. Mr. Kim obviously knew Mr. Pierre's name. He could have said he wanted Mr. Pierre terminated or whatever, but he said the black guy, the black guy in your department. Black, I don't know how else you could tell. But even when you first told us about that, you said long before, and why wasn't this a classic stray remark? Well, the reason it is not a classic stray remark is we see a connection going down because before that, he had no performance issues. There was no problem. But from the time of that a political appointee, he should be out. I say that that is just a pretext for getting out the same guy that they don't want there anyway. The guy that his boss had referred to as that black guy. This happened in 2016. Early 2016, then there were at least three potential people who could act as an interim head of the property division. But the person who was picked was the person with the least experience. Even Cox admitted that Susie Thomas, a woman of East Indian origin, had more experience than Bruce Gard, had been a supervisor at the office of the comptroller before Ms. Bruce Gard. But the reason he gave why Ms. Thomas was not appointed interim was Ms. Thomas was, quote, too abrupt with people. Too abrupt with people, that was all, not because Ms. Thomas didn't have the experience, not because Ms. Thomas was incompetent. Then it was convenient for them to say she was too abrupt with people. Then with regard to Pierre, who had a legal qualification that Ms. Bruce Gard didn't have, had been a supervisor for at least 22 years before coming to the comptroller's office and supervised people within the three years he was there. They credited the only supervisory experience that Mr. Goldman had was in private practice before coming to the comptroller's office. But they did not credit the supervisory experience that Mr. Pierre had as a manager at Chemical Bank for over 10 years and as an assistant DA in Kings County for over 12 years, plus about two years in the comptroller's office. If you look at the interview logs and everything, they did not refer at all to that prior experience. But meanwhile, they focused on the prior experience of Mr. Goldman. They did not refer to any experience of Mr. Goldman within the office of comptroller because he had none. He had no supervisory experience in the comptroller's office. The only supervisory experience that he had that would help him was the one that he acquired before coming there. But they treated him differently in the sense that they did not consider my client's supervisory experience for a much longer period, which he had before coming there, plus the supervisory experience that he got there, which is supported by Emilio Gonzalez, who was his direct supervisor. He said he supervised people and that's a part. If you look at Mr. Polley, you're out of time. You have two minutes for rebuttal. So go ahead. Good morning, Your Honors. Jane Gordon on behalf of the Corporation Council and appellees. With the court's permission, I'd like to focus on the claims that are still in play on appeal. I will begin with the city and federal failure to promote claims against the individual defendants. That is specifically the appointment of a new division chief for the property damage division, which ultimately went to Judith Broussard and the division chief position of school claims in June 2016 that went to Ross Goldbrand. This record establishes beyond a doubt that appellees established legitimate non-discriminatory reasons for why those two individuals were appointed to those positions. I will not belabor their qualifications, but they are evident in the resumes in the record and the contemporaneous notes of their interviews. At that point, it became Mr. Pierre's burden to tender sufficient evidence to support a rational finding that these legitimate non-discriminatory reasons were false. He failed to do that, as the district court correctly found. Primarily, Mr. Pierre relied on an alleged comment that Mr. Kim... Actually, it's not that they were false, but they were pretextual. They could be perfectly true, but not the reasons for the decision. Thank you, Your Honor. I stand corrected. Mr. Pierre primarily relied on a comment allegedly made nearly a year before the hearing, which Mr. Kim denied, that they needed to get rid of the black guy because he was making too much money. Now, the fact that whether the statement was made as in dispute is not material, and it's not material for a number of reasons. First, it is undeniable that Mr. Pierre was never dismissed. His salary was never reduced. To my knowledge, he remains working at the comptroller's office to this day. Yes, but the argument that they are making was that this was not used as an identification, but was a characteristic of this person, Mr. Pierre, and that because of that characteristic, they didn't want to do things for him, which could be evidence that they didn't want to do something for him when it came to a promotion. That's the argument. That's the argument, Your Honor. But even if you credit that argument, it is still too remote in time and was made in a context entirely unrelated to the promotion process to meet that burden of being. The comment was, we assume it was made. It was made by someone who was involved in the promotion decision. It was in one of the decisions. One of the decisions, Your Honor. One of the decisions. However, there's no evidence that in that one decision that Mr. Kim discussed Mr. Pierre's credentials, discussed the recommendation or his involvement in the interview process. Plaintiff failed to tender any evidence to suggest that Kim became any deeply involved in any way in that decision. But the context of the remark is most revealing because it does not meet his burden to show that discrimination was the real reason for choosing other better qualified candidates. What about the city claim? I mean, we've struggled over the years with the difference between Title VII and the city law, and the city law is much more liberal. I mean, why was the city claim properly dismissed on this record? Even under the more liberal city law, a random comment such as this is insufficient. Well, that's fine. But if the law is different, and if there is no federal claim, isn't it more appropriate to let state cases or city cases be decided in city and state courts? I mean, why should federal courts be deciding matters of state law when there is no issue, as you suggest, there isn't a federal law? Your Honor, here, the claims are based on this identical body of evidence. And while that is a matter of state law, of city law, the degree of causation, which is one of the major differences between state and city law, is one of the things that you were pointing to because you say the distance a year was too great. Well, a year may be too great under the standard of causation for federal law, but may not be for state law. I should have thought that you would tell us that they didn't raise this argument, that the first place they raised it was in the reply brief. Well, that's true, Your Honor. Thank you for reminding me of that. It was not an argument that they raised in their main brief. But to the extent that the court is concerned about it, the district court and this court routinely applies the city law in these cases and does so very thoroughly and very well and very capably. And the district court did that here, and there's no reason to be concerned that the claim was not remanded to state court. If the court has no further questions of me, I am happy to rely on my brief. Thank you. Thank you. Mr. Okole, you have some rebuttal time. You're on mute. Thank you. In terms of whether we raised this, we raised it in our main brief that it was wrong to dismiss the city's human rights claim. They have different standards, and that will be found from pages 17 through 19. And also, that's of our brief, pages 17 through 19. Did you argue in your main brief that the court should have declined pending jurisdiction over the city claims? No, I argued that it was wrongly dismissed, that they wrongly applied it. Wrongly dismissed on the merits. I'm asking whether you argued in the main brief that the district court should have declined to exercise jurisdiction over the city law claims. Not in specific terms. Okay. Not specifically, but I did say that the dismissal was improper because it's two different standards that we're dealing with. Well, that's a different argument. The argument on the merits, you do make, but that's a different question. You argued that the district court should have decided for you on state law, and that's a perfectly good argument. It just happens to be a different one. Your Honor, if I may quickly point out something that we seem to have ignored. The main foundation on which the court dismissed the claims is the reply affidavit of Riley that they extended interviews to everyone regardless of their qualification. That argument shouldn't have been credited. The court certainly relied heavily on that argument in its decision in coming to the conclusion in dismissing. That is when, in fact, it was an argument made for the first time in reply papers that it was the practice of the office of the controller to interview everyone regardless of their qualification. Because our argument was that based on their own guidelines, the people who got the position shouldn't have been interviewed. And if they were not interviewed, we would not get to the point of seeing how they performed at an interview. There has to be a reason why you have guidelines as to who must apply and what kinds of documents you require from them. Adam Karp, who's an attorney with a Masters in Business Administration, who wrote the job description for the position and who sat on the interview panel for Goldbank, admitted that Goldbank's application package did not meet the minimum requirements. Mr. Cawley, you're out of time. I have one friendly suggestion for you. You're looking off to the side. Most of the time, half of your face is off the screen. Oh, I'm sorry. And you're not making eye contact with us. So I think the next time you argue, look squarely into the camera. All right. Thank you. It's nice to see your face fully. Thank you very much. All right. Thank you both. The court will reserve decision.